UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOICE OF SAN DIEGO; WILL HUNTSBERRY, <br><br> Plaintiffs, <br><br> v. <br><br> NAVAL CRIMINAL INVESTIGATIVE SERVICE; U.S. DEPARTMENT OF THE NAVY; U.S. DEPARTMENT OF DEFENSE, <br><br> Defendants. | Case No.: 22-CV-834 TWR (DEB) <br><br> **ORDER (1) GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (2) DENYING WITHOUT PREJUDICE PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT, AND (3) ORDERING DEFENDANTS TO SUPPLEMENT THE RECORD** <br><br> (ECF Nos. 40, 43, 45, 46) |

Presently before the Court are the cross-motions for summary judgment filed by Defendants Naval Criminal Investigative Service ("NCIS"), U.S. Department of the Navy, and U.S. Department of Defense (ECF No. 40, "Defs.' MSJ") and Plaintiffs Voice of San Diego and Will Huntsberry (ECF No. 43, "Pls.' MSJ") (together, the "Motions"). The Motions are fully briefed, (*see* ECF Nos. 40, 43, 45–46), and the Court held a hearing on November 16, 2023. (*See* ECF No. 50.) Having carefully considered the Parties' arguments, the record, and the applicable law, the Court **GRANTS IN PART AND**

1

**DENIES WITHOUT PREJUDICE IN PART** Defendants' Motion for Summary Judgment and **DENIES WITHOUT PREJUDICE** Plaintiffs' Cross-Motion for Summary Judgment.

## BACKGROUND

### I. Undisputed Material Facts

The Parties have agreed to the following undisputed material facts:

#### A. *Submission of FOIA Request*

"Plaintiff Will Huntsberry filed a [Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,] request on January 26, 2022, seeking NCIS's investigations into the deaths of 20 individuals who allegedly died by suicide in 2020 and 2021 while serving in the Navy and Marine Corps, in the San Diego area." (*See* ECF No. 46-1 ("Jt. Stmt.") ¶ 1.)   Plaintiff Huntsberry, who is a reporter for Plaintiff *Voice of San Diego* news organization, "identified himself as a member of the media in the request." (*Id.*; *see also* ECF No. 15 ("First Amended Complaint" or "FAC") ¶¶ 1–2.)

"NCIS responded to Plaintiffs' FOIA request on February 2, 2022." (*Id.* ¶ 2.) In its response, "NCIS stated that its search had yielded no responsive records for two of the 20 individuals." (*Id.*)  "NCIS explained that 14 of the investigations that Plaintiffs had requested were closed, while four of the investigations were still pending." (*Id.*)  "NCIS further explained that the 14 closed investigations had not yet been entered into the electronic database at Headquarters (the Records Imaging Management System) for retention." (*Id.*)  "NCIS stated that, because the records required coordination with another office, Plaintiffs' request fell within 'unusual circumstances.'" (*Id.*)  "Accordingly, NCIS needed to extend the time limit to respond beyond the 10 additional days provided by the FOIA statute." (*Id.*)  "NCIS further stated that once coordination was complete, Plaintiffs' request would be placed in NCIS's routine queue, which was managed on a first-in, first-out basis based on the date of the request, and which at that time had a backlog of approximately 12 to 16 weeks." (*Id.*)

"On April 26, 2022, Plaintiff Will Huntsberry wrote to NCIS, asking it to clarify 'what office currently holds these records and why it is an unusual circumstance' for NCIS to obtain the records." (*Id.* ¶ 3.)  "He also asked whether it was possible to appeal the 'unusual circumstance' determination." (*Id.*)

"On April 27, 2022, NCIS responded, explaining that, 'in this instance[,] the "unusual circumstances" means that we are waiting for the completed investigations to be submitted to NCIS Headquarters for retention in our Records Management System.'" (*Id.* ¶ 4.)  "NCIS explained that '[o]nce investigations are closed in the field, they are packaged up and sent via USPS to NCIS Headquarters in Quantico, VA,' and that '[o]nce they have arrived, they are scanned and uploaded into our Records Management System.'" (*Id.*)  "NCIS stated that '[t]he whole process can take months to complete.'" (*Id.*)  "NCIS explained that once the files were made available to the FOIA office, the request 'will go into our Regular queue, which is managed on a first in/first out bas[i]s.'" (*Id.*)  "NCIS also stated that '[w]e have advised all offices concerned that there are pending FOIA requests for these files, so that they can expedite their processes.'" (*Id.* ¶ 4.)  "NCIS also stated, 'We could process the CLOSED reports to these investigations. Closed reports are normally around 2 to 3 pages in length. Please advise if you would like us to process the closed reports to these 14 investigations. Electing to receive the closed reports will not prevent you from receiving the full Reports once they are all available.'" (*Id.* ¶ 5.)

### B.    Initiation of the Lawsuit

"Plaintiffs sued under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* on June 8, 2022." (Jt. Stmt. ¶ 6; *see also generally* ECF No. 1.)  "Defendants filed a motion to partially dismiss Plaintiffs' complaint on July 11, 2022." (Jt. Stmt. ¶ 7; *see also generally* ECF No. 12.)

"Plaintiffs filed a First Amended Complaint ('FAC'), removing references to the four investigations that had not yet closed and the two individuals for whom NCIS had located no investigations." (Jt. Stmt. ¶ 8; *see also generally* FAC.)  "Accordingly, the FAC focused on fourteen identifiable investigations that had closed." (Jt. Stmt. ¶ 8.)

"Defendants answered the FAC on August 11, 2022." (*Id.* ¶ 9; *see also generally* ECF No. 16.)

## C.    Defendant NCIS's Production of Records

"NCIS provided its first release of records in response to Plaintiffs' FOIA request on August 10, 2022, producing investigations related to the deaths of nine individuals." (Jt. Stmt. ¶ 10.)  NCIS subsequently produced "investigations related to the deaths of three individuals on August 31, 2022," and "investigations related to the deaths of two individuals on October 11, 2022." (*Id.* ¶¶ 11–12.)  In its October 11, 2022 production, one of the files "related to the investigation into the death of Xavier Maldonato-Soto." (*Id.* ¶ 12.)  Although NCIS produced records regarding Mr. Maldonato-Soto, the Parties agree that NCIS's application of exemptions with respect to those records is not at issue.[1] (*See id.* ¶¶ 12, 20.)

Enclosed with each release of records was a cover letter from "Karen Richman of NCIS's Government Information Sharing Unit," which "stated that the files 'contain personal identifiers (such as names and social security numbers) of third parties, the release of which would constitute an unwarranted invasion of personal privacy.'" (*Id.* ¶¶ 10–12). "NCIS therefore partially denied the FOIA request pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C)." (*Id.* ¶¶ 10–12.)  "Ms. Richman's cover letter also attached 'an enclosure explaining the various exemptions of the FOIA,' including Exemption 6 and Exemption 7(C)." (*Id.* ¶¶ 10–12.)

"NCIS produced the investigative file related to the death of Alberto CJ Sanchez Larson on January 17, 2023, which had been inadvertently omitted from a previous production." (*Id.* ¶ 14.)  As with the other productions, enclosed with the January 17, 2023, production was a cover letter from Ms. Richman stating that the file "contained personal identifiers (such as names and social security numbers) of third parties, the release of which

---

[1]    The *Vaughn* Index entries concerning Mr. Maldonato-Soto's records appear on pages 32 through 40 of Defendants' *Vaughn* Index.  (*See* ECF No. 40-2 ("*Vaughn* Index") at 32–40.)

would constitute an unwarranted invasion of personal privacy" and that the FOIA request had been "partially denied . . . pursuant to 5 U.S.C. §§ 552(b)(6) and (b)(7)(C)." (*Id.* ¶ 14.)

"The parties participated in an Early Neutral Evaluation and Case Management Conference on January 4, 2023." (*Id.* ¶ 13.) "Prior to the ENE, the parties exchanged settlement proposals pursuant to the order of Magistrate Judge William V. Gallo." (*Id.*) "Plaintiffs' December 14, 2022 settlement proposal included a list of items from NCIS's releases whose redaction or withholding Plaintiffs disputed." (*Id.*) "Following the ENE, Judge Gallo ordered that '[n]o later than Wednesday, February 8, 2023, Defendants shall review and produce all non-exempt documents responsive to Plaintiff's December 14, 2022 settlement proposal and Plaintiff's January 25, 2022 FOIA Request.'" (*Id.* (quoting ECF No. 29 at 2.))

 "Defendants sent Plaintiffs a *Vaughn* index on February 3, 2023[,] addressing the disputes Plaintiffs had raised in their December 14, 2022 list." (*Id.* ¶ 15.) "Defendants also released four pages from the investigative files with some redactions removed." (*Id.*)

"On March 17, 2023, Defendants sent Plaintiffs a 'Supplemental' *Vaughn* index addressing additional disputes Plaintiffs had raised on March 2, 2023." (*Id.* ¶ 16.) "Defendants also re-released one page from the August 10, 2022 production with certain redactions removed." (*Id.*)

"On March 20, 2023, Plaintiffs sent Defendants a complete list of redactions and withheld files that Plaintiffs disputed." (*Id.* ¶ 17.) "On May 22, 2023, Defendants sent Plaintiffs a 'Second Supplemental' *Vaughn* index addressing the complete disputes raised by Plaintiffs on March 20, 2023." (*Id.* ¶ 18.) "Defendants also released six PDFs (roughly 15 pages) comprising supplemental releases or removals of redactions from NCIS's previous productions." (*Id.*)

## II.   Relevant Procedural History

The First Amended Complaint alleges a single cause of action for violation of FOIA and seeks injunctive relief with respect to Plaintiff Huntsberry's FOIA request for a copy

of the investigative files regarding the deaths of the following fourteen U.S. Navy and Marine Corps personnel:

1. Kellen Steven Watelet, U.S. Navy;
2. Joshua James Lynn Hedges, U.S. Navy;
3. Emilea Elayna Johnson, U.S. Navy;
4. Austin Thomas Henderson, U.S.M.C.;
5. James Andrew Tue Thien Phu Vo, U.S. Navy;
6. Tyson Barry Brown, U.S.M.C.;
7. Victor Ramon Figueroa, U.S.M.C.;
8. Brian Russell Gibbons, U.S. Navy;
9. Alberto CJ Sanchez Larson, U.S.M.C.;
10. Michael Morgan Soesbee, U.S.M.C.;
11. Isaiah Glenn Silvio Peralta, U.S. Navy;
12. Mary Eunice McGavin, U.S.M.C.;
13. John Harnack Madeus, U.S. Navy; and
14. Angel Antonio Bielostozky, U.S.M.C.

(FAC ¶ 7.) Plaintiffs also seek declaratory relief, attorneys' fees, and costs. (*See generally* FAC Prayer.)

Because discovery is generally unavailable in FOIA cases, *see, e.g.*, *Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003); *see also, e.g.*, *Wiener v. F.B.I.*, 943 F.2d 972, 977 (9th Cir. 1991), the Court vacated the relevant discovery deadlines. (*See* ECF No. 27.) The Parties completed an Early Neutral Evaluation with Judge Gallo and subsequently appeared before him for a series of joint status conferences. (*See generally* Docket.)

On August 3, 2023, Defendants filed the instant Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, (*see* ECF No. 40), and on August 31, 2023, Plaintiffs filed their consolidated Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion, (*see* ECF No. 43). Defendants opposed Plaintiffs' Cross-Motion and replied in support of their own, (*see* ECF No. 45), and Plaintiffs filed a reply in support of their Cross-Motion, (*see* ECF No. 46). On October 12, 2023, the Parties filed a Joint

Statement of Facts, (*see* ECF No. 46-1), as required by the undersigned's Standing Order for Civil Cases.

## LEGAL STANDARDS

### I.  Summary Judgment

Under Federal Rule of Civil Procedure 56, a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Although materiality is determined by substantive law, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).  A dispute is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When considering the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.*  "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial.  *Celotex*, 477 U.S. at 324.  This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *see also Anderson*, 477 U.S. at 248. Accordingly, the nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256.

Where, as here, the parties have filed cross-motions, the court considers each motion "separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *See SEC v. Feng*, 935 F.3d 721, 728 (9th Cir. 2019). The Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

## II.    FOIA

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). Accordingly, "[u]pon request, FOIA mandates disclosure of records held by a federal agency" unless disclosure is prohibited by law or the requested records fall within the statute's nine exemptions enumerated in 5 U.S.C. § 552(b). *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7–8 (2001) (internal citations omitted); *see also* 5 U.S.C. § 552(a)(8)(A)(i).

The nine exemptions to disclosure carved out in FOIA "do not obscure the basic policy that disclosure, not secrecy, is [FOIA's] dominant objective." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). FOIA's presumption in favor of disclosure means that these exemptions "'are to be interpreted narrowly.'" *Lahr*, 569 F.3d at 973 (quoting *Assembly of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992)). The presumption in favor of disclosure also means that an agency invoking a statutory exemption "bears the burden of demonstrating that the exemption properly applies to the

documents." *Lahr*, 569 F.3d at 973; *see also* 5 U.S.C. § 552(a)(4)(B).  An agency must articulate "tailored reasons" for the application of an exemption in response to a FOIA request.  *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012).  Neither boilerplate nor conclusory statements will suffice.  *Id.*

The FOIA Improvement Act of 2016 ("FIA"), which agencies must satisfy for all FOIA requests filed after the bill's June 30, 2016 enactment, P.L. 114-185, 130 Stat. 538 (2016), further clarifies that even where one of the nine exemptions applies, the requested information only may be withheld if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)[.]" 5 U.S.C. § 552(a)(8)(A)(i)(I); *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 782 (9th Cir. 2022) (in case involving Exemptions 6 and 7(C), explaining that withholding is permissible only where agency reasonably foresees disclosure would harm an interest protected by exemption and only after taking reasonably necessary steps to segregate and release nonexempt information (citing 5 U.S.C. § 552(a)(8)(A))); *Ecological Rights Found. v. U.S. Env't Prot. Agency*, 607 F. Supp. 3d 979, 991 (N.D. Cal. 2022), *aff'd* 2023 WL 4342100 (9th Cir. July 5, 2023) (explaining that FIA "strengthened FOIA's preference for disclosure by requiring that" an "agency seeking to avail itself of an exemption articulate why it is reasonably foreseeable that disclosure would harm an interest protected by the exemption" (internal citation omitted)); *Ctr. for Investigative Reporting v. U.S. Dep't of Lab.*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019) ("Consequently, even if information falls within the scope of a discretionary exemption, it cannot be withheld from the public unless the agency also shows that disclosure will harm the interest protected by that exemption."). "Post-FIA, the foreseeable harm standard applies to all exemptions, and is not restricted to" any one exemption.  *Ctr. for Investigative Reporting*, 424 F. Supp. 3d at 780.

Additionally, even when an exemption applies to a document, FOIA requires that any "reasonably segregable portion of a record" be disclosed after the exempted portions of the document are deleted.  5 U.S.C. § 552(b).  The Ninth Circuit has made clear that "[i]t is reversible error for the district court to simply approve the withholding of an entire

document without entering a finding on segregability, or the lack thereof, with respect to that document." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015) (internal quotation marks omitted) (quoting *Wiener*, 943 F.2d at 988). Rather, a district court must make a "'specific finding that no information contained in each document or substantial portion of a document withheld is segregable.'" *Id.* (quoting *Wiener*, 943 F.2d at 988).

The agency asserting the exemption bears the burden of establishing that all reasonably segregable portions of a document have been disclosed. *Id.* To satisfy this burden, an agency can provide "the district court with a reasonably detailed description of the withheld material and 'alleg[e] facts sufficient to establish an exemption.'" *Id.* (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008), *overruled on other grounds by Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016)). While a district court must "take seriously its role as a check on agency discretion," the court need not engage in "a page-by-page review of an agency's work." *Id.*

## III.    Summary Judgment in FOIA Cases

A federal court reviews an agency's response to a FOIA request *de novo*. 5 U.S.C. § 552(a)(4)(B). "Because facts in FOIA cases are rarely in dispute, most such cases are decided on motions for summary judgment." *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 688 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 989; *see also Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1081 (N.D. Cal. 2015) ("FOIA cases are typically decided on motions for summary judgment."). "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination." *Animal Legal Def. Fund*, 836 F.3d at 990.

For an agency to prevail at summary judgment regarding the application of an exemption, an agency typically must "submit an index and 'detailed public affidavits' that,

together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Yonemoto*, 686 F.3d at 688 (quoting *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 990). The index, also known as a *Vaughn* index after *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974), must "describe the justifications for nondisclosure with reasonably *specific* detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Transgender L. Ctr.*, 46 F.4th at 781 (quoting *Hunt v. C.I.A.*, 981 F.2d 1116, 1119 (9th Cir. 1992)) (emphasis added). Collectively, the agency's *Vaughn* index and supporting materials must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Lahr*, 569 F.3d at 989 (quoting *Lion Raisins*, 354 F.3d at 1082).

An agency's FOIA affidavits, such as the *Vaughn* index, "are presumed to be in good faith," *Hamdan*, 797 F.3d at 772, and should be accorded "substantial weight," *Shannahan*, 672 F.3d at 1148. Indeed, courts may rely entirely on government affidavits "'so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim.'" *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135 (9th Cir. 2008) (quoting *Lion Raisins*, 354 F.3d at 1079). Provided the affidavits "contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, 'the district court need look no further.'" *Lewis v. I.R.S.*, 823 F.2d 375, 378 (9th Cir. 1987) (quoting *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d at 990).

A court may grant partial summary judgment where an exemption was properly applied to some, but not all, of the records. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 175 (2004) (identifying district court's grant of partial summary judgment

on claims of exemption as "the correct approach"); *see also, e.g.*, *Trucept, Inc. v. I.R.S.*, No. 15-cv-447, 2017 WL 2869531, at *6–9 (S.D. Cal. July 5, 2017) (deferring summary judgment as to documents withheld pursuant to exemptions 3, 6, and 7(C); granting partial summary judgment as to four pages of documents withheld pursuant to exemption 5, three pages pursuant to exemption 7(A), and forty pages pursuant to exemption 7(D); and denying as to nine pages pursuant to 7(E)).

## ANALYSIS

Through the instant Motions, Plaintiffs and Defendants each seek summary judgment in their favor as to Plaintiffs' FOIA claim. (*See* Pls.' MSJ at 1–2; Defs.' MSJ at 1–2.) Alternatively, to the extent the Court concludes NCIS has improperly withheld any records, or portions thereof, Defendants seek partial summary judgment as to those records the Court finds have been withheld properly pursuant to an exemption. (Defs.' MSJ at 17.) Defendants seek summary judgment on the grounds that they performed an adequate search and properly redacted and withheld production of records pursuant to Exemptions 6 and 7(C). (Defs.' MSJ at 9.) Plaintiffs cross-move for summary judgment, alleging that Defendants improperly redacted and withheld records pursuant to Exemptions 6 and 7(C) and furnished an insufficient *Vaughn* Index. (Pls.' MSJ at 6, 17.) Plaintiffs also seek an order requiring Defendants to produce the withheld information. (*Id.* at 22.)

First, the Court considers the adequacy of Defendants' search for responsive records. Second, the Court considers the applicable FOIA exemptions and examines whether Defendants have met their burden of demonstrating nontrivial privacy interests in the withheld information. In making this determination, the Court evaluates the adequacy of Defendants' *Vaughn* Index and supporting declarations. Ordinarily, the Court then would consider whether Plaintiffs have demonstrated a significant public interest in the withheld information and balance the privacy interests against the public interests. For the reasons set forth below, however, the Court will not reach this step because Defendants' *Vaughn* Index and supporting materials do not meet the Ninth Circuit's standards. As the record is insufficient to determine whether NCIS's withholdings are appropriate under Exemptions

6 and 7(C), the Court will order further submissions from Defendants and deny both motions for summary judgment without prejudice as to the propriety of the withholdings.

## I.    Adequacy of Defendants' Search

In responding to a FOIA request, an agency must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). An agency can meet its burden by providing "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* (internal quotation marks omitted). Such affidavits must include "relatively detailed" descriptions of the "files searched and the search procedures." *Id.* at 573 (internal citation omitted).

Here, Plaintiffs do not dispute that Defendants conducted an adequate search for responsive documents. (Pls.' MSJ at 6 n.5.) Further, Defendants provide a declaration from Karen Richman, Senior Associate Counsel within the NCIS Headquarters, Government Information Sharing Unit, which is the office tasked with reviewing and responding to FOIA requests submitted to the Navy or NCIS that seek records within NCIS's purview. (ECF 40-1 ("Richman Decl.") ¶¶ 1–3.) Ms. Richman's declaration details Defendant NCIS's search for responsive records and establishes it as sufficiently thorough. (*Id.* ¶¶ 5, 7–8, 11, 13–16, 18); *see also Zemansky*, 767 F.2d at 571. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment as to the adequacy of their search. *See, e.g.*, *Our Children's Earth Found.*, 85 F. Supp. 3d at 1084, 1086, 1088–89 (granting summary judgment on adequacy of search, holding in abeyance summary judgment motions where record was insufficient to determine whether withholdings were appropriate under exemptions 5 and 6, and ordering government to supplement factual record).

## II.    Claimed Exemptions

FOIA sets forth nine exemptions that permit an agency to withhold information in response to a FOIA request. 5 U.S.C. § 552(b). These exemptions "reflect a recognition that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *Am. C.L. Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 483

(9th Cir. 2018) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). Defendants must prove that the withheld information falls within each of the FOIA exemptions applied.  *Lahr*, 569 F.3d at 973; *see also* 5 U.S.C. § 552(a)(4)(B).

Here, Defendants have applied the same two exemptions to each of the 118 entries in the *Vaughn* Index that were either partially redacted or withheld in full: Exemptions 6 and 7(C).  (*See generally* ECF No. 40-2 ("*Vaughn* Index"); Richman Decl. ¶ 57.)  Of the 118 entries, 97 entries remain at issue.[2]  (*See generally Vaughn* Index.)

### A.    Exemptions 6 and 7(C)

FOIA Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  Both exemptions "speak of an 'unwarranted' invasion of personal privacy, not any invasion." *Lahr*, 569 F.3d at 973.  Therefore, to determine whether a record properly has been withheld pursuant to either exemption, "[the court] must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Id.*

While Exemptions 6 and 7(C) are similar, however, the two provisions command different analyses, as "Exemption 7(C)'s privacy language is broader than the comparable language in Exemption 6 in two respects." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989).  First, Exemption 6 "requires that the invasion of privacy be '*clearly* unwarranted,' a requirement omitted from the language of Exemption 7(C)." *Lahr*, 569 F.3d at 974 (emphasis in original) (quoting *Reporters Comm.*,

---

[2]    Twenty-one entries are not at issue: nineteen pertain to Mr. Maldonato-Soto, whose records Plaintiffs are no longer seeking, (Pls.' MSJ at 22 n.10), and two are records Defendants already have unredacted.  (*See Vaughn* Index at 32–40, 54, 56.)

489 U.S. at 756).  Second, while Exemption 7(C) prevents disclosure of information that "could reasonably be expected to constitute" an unwarranted invasion of privacy, Exemption 6 restricts disclosure of information that "would constitute" an unwarranted invasion of privacy.  *Id.* (citing *Reporters Comm.*, 489 U.S. at 755–56).

Exemption 7(C), therefore, is more protective of privacy interests than Exemption 6, as the "threatened invasion" of privacy "need not be as likely as where personnel, medical, or similar files are at issue (Exemption 6)."  *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992); *see also Ray*, 502 U.S. at 172 ("[T]he Government's burden in establishing the requisite invasion of privacy to support an Exemption 6 claim is heavier than the standard applicable to Exemption 7(C)."); *Pomares v. U.S. Dep't of Veterans Affs.*, No. 21-cv-084, 2023 WL 2378939, at *7 (S.D. Cal. Jan. 6, 2023) ("Exemption 7(C) is more protective of privacy interests than is Exemption 6 . . . ."); *Buckovetz v. U.S. Dep't of the Navy* ("*Buckovetz I*"), No. 14-cv-2115, 2016 WL 4801335, at *3 (S.D. Cal. Apr. 8, 2016) ("Exemption 7(C) is similar to, but broader than, Exemption 6.").  Further, "although both exemptions require the court to engage in a similar balancing analysis, they 'differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions.'"  *Lahr*, 569 F.3d at 974 (quoting *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994)).

Here, Plaintiffs concede that all the records at issue were compiled for law enforcement purposes.  (Pls.' MSJ at 7 n.6 ("Plaintiffs do not dispute that the records they seek were compiled for law enforcement purposes."))  Accordingly, the lower threshold for Exemption 7(C) governs.  *See Lahr*, 569 F.3d at 974 (applying Exemption 7(C) standard where government claimed both Exemption 6 and Exemption 7(C) for disputed redactions); *Hunt*, 972 F.2d at 288 (applying Exemption 7(C) where parties conceded file was compiled for law enforcement purposes).

## B.   The Privacy Interests at Stake

As set forth above, Exemption 7(C) calls for a balancing of privacy interests against public interests.  *Lahr*, 569 F.3d at 973.  The court first must "evaluate the personal privacy

interest at stake to ensure that disclosure implicates a personal privacy interest that is nontrivial or more than *de minimis*."  *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017).  To this end, "[a] showing that the interest is more than *de minimis* will suffice."  *Id.* at 638.

In evaluating the privacy interests at stake, the Supreme Court has underscored that "the concept of personal privacy under Exemption 7(C) is not some limited or cramped notion of that idea."  *Favish*, 541 U.S. at 165.  "Instead, personal privacy interests encompass a broad range of concerns relating to an 'individual's control of information concerning his or her person,' and an 'interest in keeping personal facts away from the public eye.'"  *Lahr*, 569 F.3d at 974 (quoting *Reporters Comm.*, 489 U.S. at 763, 769); *see also Cameranesi*, 856 F.3d at 638 ("Rather, a disclosure implicates personal privacy if it affects either 'the individual's control of information concerning his or her person' or constitutes a 'public intrusion long deemed impermissible under the common law and in our cultural traditions.'" (internal citations omitted)).  Under Exemption 6, which is relevant in construing Exemption 7(C),[3] disclosures that "would subject individuals to possible embarrassment, harassment, or the risk of mistreatment" are considered nontrivial. *Cameranesi*, 856 F.3d at 638.

Initially, Defendants submitted a single declaration in support of their Motion for Summary Judgment, the Declaration of Karen Richman, Senior Associate Counsel in NCIS's Government Information Sharing Unit.  (Richman Decl. ¶ 1.)  In response to some of the arguments in Plaintiffs' consolidated Opposition and Cross-Motion for Summary Judgment, Defendants submitted a Supplemental Declaration of Karen Richman.  (ECF No. 45-1 ("Supp. Richman Decl."))  Ms. Richman explains in her declarations that NCIS applied Exemptions 6 and 7(C) to protect the privacy interests of three types of people:

---

[3]    The Supreme Court has noted that the phrase "personal privacy" appears in both Exemptions 6 and 7(C), and, therefore, "the reach of that phrase in Exemption 6 is pertinent in construing Exemption 7(C)."  *FCC v. AT&T*, 562 U.S. 397, 407–08 (2011); *accord Hunt*, 972 F.2d at 288.

(1) the deceased servicemembers, (2) their surviving next of kin and family members, and (3) third parties.  (Richman Decl. ¶ 29.)  Plaintiffs broadly challenge all three categories, arguing that both the deceased servicemembers and their families and surviving next of kin have diminished privacy interests in the records at issue.  (*See* Pls.' MSJ at 7–12.)  With respect to the third category, Plaintiffs assert that they "are not seeking the names of third-parties," with one exception, and "are not seeking personally identifiable information about witnesses or the names of third-parties mentioned in the investigative files."  (*Id.* at 11–12.)  As Defendants point out, however, Plaintiffs continue to request records that likely would disclose such information.  (Defs.' Reply at 8–9.)  The Court, accordingly, concludes that Plaintiffs also are challenging withholdings pertaining to third parties.  (*See* ECF No. 46 ("Pls.' Reply") at 5 ("A review of the redacted information does not suggest that the third-party individuals' identities would necessarily be ascertainable if the information [were] disclosed."))

### C.    Adequacy of the Vaughn Index

To determine whether Defendants are entitled to summary judgment on the applicability of Exemption 7(C), the Court must evaluate the submitted affidavits and *Vaughn* Index attached to Defendants' Motion for Summary Judgment.  Unless otherwise rebutted, the *Vaughn* Index and affidavits are accorded "substantial weight," *Shannahan*, 672 F.3d at 1148, and entitled to a presumption of good faith, *Hamdan*, 797 F.3d at 772.  The affidavits will carry Defendants' burden if sufficient detail is included to permit the Court to conclude that the withheld information "logically falls" within the claimed exemption.  *Transgender L. Ctr.*, 33 F.4th at 1196

In her Supplemental Declaration, Ms. Richman explains NCIS's rationale for applying Exemptions 6 and 7(C) with respect to information concerning each type of person—the deceased servicemembers, their families and surviving next of kin, and third parties.  As to the deceased servicemembers, she explains that "NCIS considers that a deceased individual (particularly a recently deceased individual) retains a substantial privacy interest in certain highly sensitive personal matters that may have been uncovered

17

or compiled during the course of a comprehensive law enforcement investigation." (Supp. Richman Decl. ¶ 17.)   "Highly sensitive personal matters" encompasses, without limitation, "the deceased individual's private diaries or journals, their private medical information, their private mental health information, their private or sensitive family information, their personal communications, and sensitive personal events from their background." (*Id.*)

Regarding the surviving family members' privacy interests, she states that their "interest inheres in records such as the deceased individual's private diaries or journals, their private medical information, their private mental health information, their private or sensitive family information, their personal communications, and sensitive personal events from their background that could impact their reputation or cause pain to their family members." (*Id.* ¶ 18.)  She further notes that surviving family members have a "particular privacy interest in not being contacted by members of the public or media, or having to be exposed to their loved one's private information in the public realm." (*Id.*)

Lastly, as to third parties, she asserts that "[t]hird parties and witnesses associated with law enforcement investigations have a strong privacy interest in protecting their identities" when they are associated with law enforcement investigations, as they "may be subject to harassment, personal embarrassment, damage to reputation, and[,] in some cases, physical danger." (*Id.* ¶ 19.)  Revelation of information sufficient to identify such third parties "could also impede future investigative efforts, in that witnesses may be unwilling to cooperate with law enforcement." (*Id.*)  She further notes that where "the records being released already are associated with the name and identity of a particular servicemember," disclosing "the relationship between the deceased individual and the third party could reasonably be expected to reveal the third party's identity to the public or to individuals with knowledge of the deceased person's social circle and relationships." (*Id.* ¶ 20.)

Plaintiffs argue that Defendants have failed to carry their burden of demonstrating the applicability of Exemptions 6 and 7(C) because the *Vaughn* Index and Richman Declarations are insufficiently detailed and "rely on routine recitations of statutory

exemptions, conclusory assertions of potential harm, and specious claims that there is an inadequate public interest in disclosure." (Pls.' Reply at 1; *see also* Pls.' MSJ at 18–21.) The Court agrees.

As set forth above, *see supra* Legal Standards § III, the government's supporting declarations and *Vaughn* Index must be "detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997) (quoting *Doyle v. FBI*, 722 F.2d 554, 555–56 (9th Cir. 1983)). "Specificity is the defining requirement of the *Vaughn* index." *Wiener*, 943 F.2d at 979; *see also Transgender L. Ctr.*, 46 F.4th at 781–82 (concluding government had not met its "burden of specificity" where *Vaughn* index consisted of generic descriptions and boilerplate statements). For Exemption 7(C), the *Vaughn* index "must, to the extent possible without sacrificing the privacy interest in the process, provide the FOIA requester with the information necessary to contest the agency's conclusion that this balance tips in favor of withholding." *Wiener*, 943 F.2d at 984.

Defendants' *Vaughn* Index falls short of this standard for two reasons. First, the document descriptions in the Index largely fail to "describe [each withheld document's] contents to the extent possible." *Muchnick v. Dep't of Homeland Security*, No. 15-cv-3060, 2016 WL 730291, at *3 (N.D. Cal. Feb. 24, 2016) (quoting *Yonemoto*, 686 F.3d at 695). For example, for the entry for "Pages 449 (31Aug22 release) V/Madeus, John," the document description simply states that the redacted information includes "3rd party names, phone number, sensitive information concerning deceased individual." (*Vaughn* Index at 19.) This description is patently insufficient: There are no details regarding the type of third party involved (servicemember, private citizen, hospital employee, etc.). As Defendants acknowledged at the hearing, there are varying degrees of applicable privacy interests with respect to third parties. (*See generally* ECF No. 50.)

The Supreme Court has explained that "information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" is not the type of information to which FOIA typically permits

access.  *U.S. Dep't of Def.*, 510 U.S. at 496; *see also Favish*, 541 U.S. at 166 ("Law enforcement documents obtained by Government investigators often contain information about persons interviewed as witnesses or initial suspects but whose link to the official inquiry may be the result of mere happenstance.  There is special reason, therefore, to give protection to this intimate personal data, to which the public does not have a general right of access in the ordinary course."); *Reporters Comm.*, 489 U.S. at 780 (explaining that in such cases, "the privacy interest protected by Exemption 7(C) is in fact at its apex").  By contrast, "although government employees have less of a privacy interest than third-parties, they still retain a right to privacy."  *Pomares*, 2023 WL 2378939, at *6.  The Ninth Circuit has recognized that lower-level employees have stronger privacy interests than more senior officials.  *See Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025–26 (9th Cir. 2008).

As the Ninth Circuit underscored in *Wiener*, "[t]he privacy interests of third persons whose names appear" in law enforcement files, "the public interest in disclosure, and a proper balancing of the two, will vary depending upon the content of the information and the nature of the attending circumstances."  943 F.2d at 985.  Because Defendants largely have not provided basic information regarding the third parties whose information is implicated, the Court cannot weigh their privacy interests against the public's interest in disclosure.  *See Wiener*, 943 F.2d at 985 ("Because it cannot be concluded that the privacy interests characteristically outweigh the public interest with respect to all of the documents withheld under Exemption 7[C], the FBI's categorical Vaughn Index is inadequate."); *see, e.g.*, *Am. C.L. Union v. FBI*, No. 12-cv-3728, 2013 WL 3346845, at *8 (N.D. Cal. July 1, 2013) (concluding FBI's declarations were inadequate where FBI provided no information specific to third parties who had varying degrees of privacy interests).

The document description for the entry for "Pages 449 (31Aug22 release) V/Madeus, John," is deficient for an additional reason:  There are no details from which the Court could conclude, or Plaintiffs could challenge, that the information concerning the deceased is "sensitive" (intra-family conflict, sexual history, etc.).  As the Ninth Circuit

explained in *Transgender Law Center*, "[w]hile it is not the case that 'an agency can never repeat language to justify withholding multiple records,' *Hamdan*, 797 F.3d at 774, an agency must 'disclose[] as much information as possible without thwarting the [claimed] exemption's purpose,' *Wiener*, 943 F.2d at 979." *Transgender L. Ctr.*, 46 F.4th at 782 (alterations and citations in original).  Although Defendants represented at the hearing that they could not disclose more information "without sacrificing the privacy interest in the process," *Wiener*, 943 F.2d at 984, Ms. Richman's supplemental declaration undercuts their argument.  In that declaration, she divulged additional details regarding several of the records appearing in the *Vaughn* Index without sacrificing the privacy interests of the individuals concerned.  (*See generally* ECF No. 50; *see also, e.g.*, Supp. Richman Decl. ¶¶ 32–33.)

The second reason the *Vaughn* Index and Richman Declarations overall fail to meet the Ninth Circuit's standards in *Wiener* and *Transgender Law Center* is that they fail to offer "a particularized explanation of why each document falls within the claimed exemption." *Transgender L. Ctr.*, 46 F.4th at 781 (quoting *Lahr*, 569 F.3d at 989).  Here, NCIS applies Exemptions 6 and 7(C) to 97 records for which three different types of privacy interests are asserted, either alone or in combination.  (*See generally Vaughn* Index.)  NCIS, however, offers nearly identical explanations for each withholding:

> Exemption 6/7C – Release of this personal information would be an unwarranted invasion of the individual's privacy and would expose this personal information to the public where it could be adversely exploited. Additionally, the individual's privacy interest in this information outweighs the public interest in its release as the unredacted personal information does not shed light onto the actions and decisions of the federal government.

(*Vaughn* Index at 1.)  The explanation varies only to the extent that additional privacy interests are asserted.  For example, for "Page 682 (10Aug22 release) V/Gibbons, Brian," NCIS asserts that releasing the information would be an "unwarranted invasion of a third[-]party individual's privacy, the deceased individuals' privacy, and the family's privacy and

/ / /

would expose the information to the public where it could be adversely exploited." (*Vaughn* Index at 8.)

Under the FIA, government agencies have an "independent and meaningful burden" to "'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Ecological Rights Found. v. U.S. Env'tl Prot. Agency*, No. 19-cv-394, 2021 WL 2258554, at *1 (N.D. Cal. June 3, 2021) (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019)). Defendants' explanations for the redactions and withholdings in the *Vaughn* Index are boilerplate and conclusory. For each entry, NCIS identifies the generalized harm that exposure of the information to the public could lead to the information being "adversely exploited" but fails to explain why the individuals whose interests are implicated have nontrivial privacy interests in the information at issue and how those privacy interests foreseeably could be "adversely exploited" if the information being withheld were disclosed. (*See generally Vaughn* Index.)

Nor do the few general paragraphs regarding the privacy interests at stake that are provided in Ms. Richman's Supplemental Declaration save Defendants. (*See* Supp. Richman Decl. ¶¶ 17–20.) Although she offers some additional details regarding records discussed in Mr. Huntsberry's Declaration, the explanations fail to address the reasonably foreseeable harm to the asserted privacy interests were the specific information withheld to be disclosed. (*See* Supp. Richman Decl. ¶¶ 31–43; *see also* ECF No. 43-1 ("Huntsberry Decl.") ¶¶ 11–31.) For example, Ms. Richman discusses Exhibit 9 to Mr. Huntsberry's Declaration (*Vaughn* Index at 5):

> Regarding Plaintiffs' Exhibit 9, Plaintiffs demand that NCIS un-redact a summary of private medical information concerning Private First Class Austin Henderson. As explained above, NCIS has concluded that individual servicemember medical information implicates strong privacy interests for Private Henderson and his family. This interest is not outweighed by Mr. Huntsberry's speculative statement that "[r]elease of this summary would

show what the military knew about the decedent's mental health and whether it had a reasonable ability to intervene before he died."  ECF No. 43-1 at 7.

(Supp. Richman Decl. ¶ 35 (citing Huntsberry Decl. ¶ 21, Ex. 9 to Huntsberry Decl.))  This conclusory explanation, which offers little more than what already appears in the *Vaughn* Index, does not suffice to carry Defendants' burden on summary judgment of demonstrating the applicability of Exemption 7(C) to this record.  *See Transgender L. Ctr.*, 46 F.4th at 781–82; *Wiener*, 943 F.2d at 984–85.  It fails, for example, to differentiate between the privacy interests at stake[4] and does not explain whether the same or different harms foreseeably would flow from disclosure of the information.  Defendants' failure to offer tailored explanations, on a document-by-document basis, to the specific information that is being withheld undermines Plaintiffs' ability to contest Defendants' redactions and withholdings—to say nothing of the Court's ability to conduct a fair assessment of the application of the exemptions.  *See, e.g.*, *Transgender L. Ctr.*, 46 F.4th at 781; *Wiener*, 943 F.2d at 978–79 (chastising FBI for making "[n]o effort" to "tailor the explanation to the specific document withheld" and remanding for FBI to revise *Vaughn* index); *Buckovetz v. U.S. Dep't of the Navy* ("*Buckovetz II*"), No. 15-cv-838, 2016 WL 1529901, at *3 (S.D. Cal. Apr. 14, 2016) (concluding *Vaughn* index was inadequate to show application of Exemption 6 where Navy failed to explain why disclosing names associated with email chain would qualify as "clearly unwarranted invasion of personal privacy"); *Muchnick*, 2016 WL 730291 at *3–4 (denying government's motion for summary judgment where *Vaughn* index consisted of "boilerplate recitations of FOIA exemption law" and "almost exclusively repeat[ed] a few general asserted grounds for withholding documents," including medical information, that fell short of Ninth Circuit's standard); *Pickard v. Dep't of Just.*, No. 06-cv-185, 2015 WL 926183, at *3–4 (N.D. Cal. Feb. 19, 2015) (concluding

---

[4]      Defendants indicate in the *Vaughn* Index that the redactions comprise "[p]ersonal private medical information concerning deceased individual" and that the record implicates the privacy interests of the deceased servicemember and his family.  (*See* Vaughn Index at 5.)

supplemental *Vaughn* index that "uses the same boilerplate text" to describe withheld information and applicable exemptions was inadequate and ordering government to provide another *Vaughn* index and supporting declaration); *Am. C.L. Union*, 2013 WL 3346845, at \*7–8 (concluding *Vaughn* submissions were inadequate to allow withholding under Exemptions 6 and 7(C) where defendant failed to provide information specific to third parties that would permit court to weigh interests and ordering defendant to produce supplemental declaration).

Two cases serve to highlight the deficiencies in Defendants' materials.   In *Transgender Law Center*, the Ninth Circuit reversed the district court's grant of summary judgment for defendants because the *Vaughn* indices were "riddled with 'boilerplate or conclusory statements.'"  46 F.4th at 781.  The Ninth Circuit noted, for example, that the *Vaughn* index provided "copy-and-pasted generic descriptions in five of six total entries invoking FOIA Exemption 5, failing to explain how the specific content of each document individually implicated the agency's deliberative process privilege" and, in invoking Exemption 7, "they provided almost identical copy-and-pasted generic descriptions in nearly every instance."  *Id.* at 782.  The Ninth Circuit remanded to the district court to direct the agencies to provide "specific, non-conclusory *Vaughn* indices."  *Id.*

The following are examples of Exemption 6 and 7(C) *Vaughn* index entries that the Ninth Circuit found to be inadequate.  The first is an entry that the U.S. Immigration and Customs Enforcement's FOIA Office prepared:

**DHS Form I-216, Record of Persons Transferred, DHS Form I-203 Order to Detain or Release Alien**

**Redacted Information per (b)(6), (b)(7)(C):**
Partial redactions pursuant to FOIA Exemptions (b)(6) and (b)(7)(C) were used on third party detainee names, alien numbers, dates of births, and Federal Identification Numbers.

**Reasons for Redaction(s):**
The disclosure of the names and other third party related information in these law enforcement forms, could reasonably be expected to constitute an

unwarranted invasion of personal privacy under Exemption (b)(7)(C) and would constitute a clearly unwarranted invasion of personal privacy under Exemption (b)(6) by: not being associated unwarrantedly with alleged criminal activity; being free from harassment, criticism, intimidation, legal consequences, economic reprisals, embarrassment, undue public attention, physical harm, and derogatory inferences and suspicion; and controlling how communications about them are communicated to others.   Further, these individuals have not consented to the release of their [personally identifiable information ("PII")].   The disclosure of this PII serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities.   Furthermore, the privacy interest in this PII outweighs any minimal public interest that could possibly exist in the disclosure of this information.

Exhibit A to Pineiro Declaration at 2–3, *Transgender L. Ctr.*, No. 19-cv-3032 (N.D. Cal. filed Aug. 31, 2020), ECF No. 38-1.   The Department of Homeland Security Privacy Office's *Vaughn* index similarly was found inadequate:

| Bates Range | Release Document Name | Description of Document | Date | Applied | Explanation of Withholdings |
|---|---|---|---|---|---|
| 000025–000040 | Detainee Death Review - Jeffry HERNANDEZ | Report | | (b)(6); (b)(7)(C) | Names and contact information of DHS employees were redacted from this record pursuant to FOIA exemption (b)(6). The employees whose names are redacted in the documents are not senior leaders.  They are not employees whose actions, decisions, or statements are subject to press coverage.  Those employees are not public figures, and there is no public interest present that outweighs their right to personal privacy.  DHS also applied FOIA Exemption (b)(7)(C) to |

| | | | | | protect the names of DHS law enforcement personnel contained with the email messages. These individuals are employees of DHS' law enforcement components and the records containing these employee[s'] names relate to DHS' law enforcement mission of enforcing US immigration laws.  Law enforcement personnel have a heightened interest in protecting their personally identifiable information, relative to members of the general public.  In particular, because of the sensitivity surrounding immigration enforcement issues, the release of these law enforcement names in connection with these issues could subject these employees to har[]assment by individuals who disagree with the Department's mission, or to harm. |
|---|---|---|---|---|---|

Exhibit G to Holzer Declaration at 4, *Transgender L. Ctr.*, No. 19-cv-3032 (N.D. Cal. filed Aug. 31, 2020), ECF No. 38-2.

Notably, courts construing Exemption 6 have held that substantial privacy interests cognizable under FOIA include personally identifiable information, such as a person's name, address, email address, phone number, medical history, and Social Security number. *See, e.g.*, *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 600 (1982) ("Information such as place of birth, date of birth, date of marriage, employment history, and comparable

data is not normally regarded as highly personal, and yet . . . such information . . . would be exempt from any disclosure that would constitute a clearly unwarranted invasion of personal privacy."); *Henson v. Dep't of Health & Human Servs.*, 892 F.3d 868, 878 (7th Cir. 2018) (concluding Exemption 6 protected "medical information about the manufacturer's patients and the contact information for employees of the manufacturer and the agency").  In *Transgender Law Center*, the Ninth Circuit nevertheless concluded that even though withheld information was of the sort typically exempted, the *Vaughn* indices still were inadequate for purposes of Exemption 7 because the largely generic descriptions "resulted in an unacceptable lack of specificity and tailoring, thus undermining TLC's ability to contest the agencies' withholdings."  *See* 46 F.4th at 781–82; *see also Yonemoto*, 686 F.3d at 696 (where description for redacted email stated it "describes [the] medical illness of an identified employee," court found that although "substantial privacy interest" appeared to be at issue, "without knowing more context, it [wa]s impossible to evaluate whether there [wa]s any public interest in disclosure" and resorted to *in camera* review).

By contrast, in *Ecological Rights Foundation*, the court concluded that the *Vaughn* Index contained sufficiently detailed entries—a conclusion that was affirmed on appeal. 607 F. Supp. 3d at 995; *see also Ecological Rights Found.*, 2023 WL 4342100, at *1 (affirming grant of summary judgment for government agency where EPA submitted 35-page affidavit "with detailed justifications for its withholdings and redactions" that was then supplemented with 650-page *Vaughn* Index "featuring particularized explanations for each FOIA exemption EPA asserted, EPA's efforts to segregate non-exempt information, and the manner in which disclosure of the withheld material would foreseeably harm interests protected by the exemptions").  Below is an example of an Exemption 5 explanation that was found to be adequate:

**Document Description**
This document is an email chain between attorneys in the office of regional counsel, discussing penalty calculations for the Brookhaven case and was not shared broadly beyond those who had a need to know.  The redacted portions of the document discuss the case team's internal valuation of the case (e.g.,

their bottom-line settlement amount) or the amount they would settle the case for to avoid litigation.

**Segregability**
The withheld material is exempt from disclosure under applicable FOIA exemptions. Factual information that is inextricably intertwined with exempt material is also withheld.

**Foreseeable Harm in Disclosure**
Disclosure of the case team's internal valuation of the Brookhaven case has the foreseeable harm of revealing the mental impressions of the attorneys working on this litigation matter. This threatens the adversarial process generally, and specifically it reduces the capacity of these attorneys to effectively litigate against similarly situated defendants going forward who would be able to utilize this information in settlement negotiations. Such disclosure further impairs the attorney-client relationship that is needed to effectively develop penalty assessments that achieve the best result for the public in environmental enforcement matters. Finally, disclosure here chills the candor of EPA staff working to decide how to assess penalty figures and negotiate settlement against defendants in environmental cases.

*Vaughn* Index at 2, *Ecological Rights Found.*, No. 20-cv-6898 (N.D. Cal. filed Nov. 17, 2021), ECF No. 30-23.

Defendants' *Vaughn* Index here stands in stark contrast to the tailored *Vaughn* index in *Ecological Rights Foundation* and provides even fewer details than the *Vaughn* indices in *Transgender Law Center* that the Ninth Circuit rejected as inadequate. "The burden should fall on the agencies, not the court, to provide sufficient detail for an adequacy review." *Transgender L. Ctr.*, 46 F.4th at 782. As they currently stand, Defendants' materials are insufficient to support withholding under Exemptions 6 and 7(C). Accordingly, Defendants are **ORDERED** to provide a further supplemental *Vaughn* Index and supporting declarations that are specific, nonconclusory, and address the concerns the Court has set forth regarding the FOIA exemptions asserted for withholding information. The Court therefore **DENIES** Defendants' Motion for Summary Judgment as to the applicability of the exemptions **WITHOUT PREJUDICE** to Defendants producing and filing an adequately detailed and tailored *Vaughn* Index and supporting declarations.

Alternatively, Defendants **MAY RELEASE** the withheld information they failed to show is exempt from disclosure under FOIA. The Court likewise **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for Summary Judgment, as the Corut is concluding that Defendants' submissions are inadequate and that Plaintiffs have not had a meaningful opportunity to challenge the exemptions, not that the information has been properly or improperly withheld. *See, e.g.*, *Edelman v. U.S. Securities & Exchange Comm'n*, No. 15-cv-2750, 2017 WL 4286939, at *7 (S.D. Cal. Sept. 27, 2017) (denying without prejudice both motions for summary judgment where *Vaughn* index was inadequate because "the Court is unable to resolve, as a matter of law, whether the SEC's application of Exemption 4 was justified"); *Elec. Frontier Found. v. CIA*, No. 09-cv-3351, 2013 WL 5443048, at *5, *21–25 (N.D. Cal. Sept. 30, 2013) (granting in part and denying in part defendants' motion for summary judgment, denying plaintiff's cross-motion for summary judgment, and setting deadline for production of supplemental materials where inadequate *Vaughn* index provided).

## C.   *Public Interest in Disclosure*

Although the Court has concluded that Defendants' *Vaughn* Index and supporting declarations fail to meet the Ninth Circuit's standards, it is worth noting that Plaintiffs' proffered public interest appears inadequate, at a minimum, with respect to certain entries pertaining to third parties. In their briefing, Plaintiffs offer several formulations of the public interest at stake, the thrust of which appears to be that the public has an interest in "understanding how the military does or does not address the mental health issues of at-risk servicemembers." (Pls.' Reply at 6.)

Once the government identifies a cognizable privacy interest, the burden shifts to the requester to demonstrate that the public interest outweighs the privacy interest at stake. *See Cameranesi*, 856 F.3d at 637. "[T]he *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lahr*, 569 F.3d at 974 (emphasis in original) (quoting *Bibles v.*

*Or. Nat. Desert Ass'n*, 519 U.S. 355, 355–56 (1997)).  Where relevant privacy interests are at stake, the proponent of the FOIA request must "demonstrate that the interest served by disclosure 'is a significant one, an interest more specific than having the information for its own sake,' and that disclosure is likely to advance that interest."  *Id.* (quoting *Favish*, 541 U.S. at 172).

Defendants' terse descriptions for many of the records at issue suggest that substantial privacy interests are at stake.  (*See, e.g.*, *Vaughn* Index at 8–9, 11, 24–31, 58–59.)  While the Court cannot perform the balancing of privacy and public interests at this time, the Court harbors doubts that Plaintiffs have met their burden of demonstrating that the public's interest would be advanced by the disclosure of certain information.  For example, Plaintiffs seek disclosure of information redacted in part from "Page 38 (31Aug22 release) V/McGavin, Mary Paragraph 2," which has the following document description: "[p]rivate personal information of third party and the deceased individual regarding sexual history."  (*Vaughn* Index at 8.)  As set forth above, *see supra* Analysis § II(C), the Supreme Court has held that in Exemption 7(C) cases where the subject of the records "'is a private citizen,' 'the privacy interest . . . is at its apex.'"  *Favish*, 541 U.S. at 166 (quoting *Reporters Comm.*, 489 U.S. at 780)); *Reporters Comm.*, 489 U.S. at 780 ("Accordingly, we hold as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'").

While the Court agrees that the public has an interest in "understanding how the military investigates deaths by suicides," (Pls.' Reply at 6), Plaintiffs do not even attempt to explain how disclosure of intimate details, such as a third party's sexual history with the decedent, would advance "the *only* relevant public interest in the FOIA balancing analysis"—"the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their

government is up to." *Lahr*, 569 F.3d at 974 (emphasis in original) (quoting *Bibles*, 519 U.S. at 355–56); *see also Yonemoto*, 686 F.3d at 696 (concluding after *in camera* review that Exemption 6 properly was applied and determining plaintiff had not "articulated a particularized public interest in knowing the type of medical illness causing the employee's absence"). And, given that the third party's privacy interest likely is "at its apex" here, the Court is dubious that Plaintiffs will be able to satisfy their burden. At this stage, however, the Court declines to make a definitive ruling on this issue.

### D.   *Segregability and Plaintiffs' Request for* in Camera *Review*

As set forth above, *see supra* Legal Standards § II, FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). The Court therefore must make segregability findings as to the withheld documents. *Hamdan*, 797 F.3d at 779; *Wiener*, 943 F.2d at 988 (explaining that a district court errs "by failing to make specific findings on the issue of segregability"). In their Cross-Motion for Summary Judgment, Plaintiffs argue that Defendants have failed to engage in the requisite segregability analysis and urge the Court to conduct an *in camera* review of ten of the thirteen records (approximately 150 pages) that Defendant NCIS has withheld entirely from disclosure and that remain in dispute. (Pls.' MSJ at 17–21; Pls.' Reply at 4, 8–10; *see generally Vaughn* Index.)

Under FOIA, the Court may conduct an *in camera* review of the records in its discretion to determine whether exemptions have been properly asserted. 5 U.S.C. § 552(a)(4)(B). "[T]he burden is on the agency to sustain its action." *Id. In camera* inspection should "not be resorted to lightly." *Lewis*, 823 F.2d at 378. As set forth above, *see supra* Legal Standards § III, "[t]o meet its burden, the agency must offer oral testimony or affidavits that are 'detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption.'" *Maricopa Audubon Soc'y*, 108 F.3d at 1092 (internal citation omitted). Courts should "only" rely on *in camera* review of the materials at issue when the "affidavits and oral testimony cannot provide a sufficient basis for a

decision . . . ."  *Id.*; *see also Lion Raisins*, 354 F.3d at 1079 ("*In camera* inspection of documents is disfavored, however, where the government sustains its burden of proof by way of its testimony or affidavits.").  In making a segregability determination, a district court is not required to "conduct a page-by-page review of an agency's work" and need not conduct an *in camera* review of each withholding "unless an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency." *Hamdan*, 797 F.3d at 779.

Stated more simply, if the court finds that the government affidavits are "too generalized," the court may examine the disputed documents *in camera* to make a "first-hand determination of their exempt status." *Lewis*, 823 F.2d at 378.  "In camera review of the withheld documents by the court is not an acceptable substitute for an adequate *Vaughn* Index," however, because the court's review "does not permit effective advocacy." *Wiener*, 943 F.2d at 979; *see also Church of Scientology*, 611 F.2d at 743.  It may, nonetheless, be appropriate when the "preferred alternative to *in camera* review—government testimony and detailed affidavits—has first failed to provide a sufficient basis for a decision." *Pollard v. FBI*, 705 F.2d 1151, 1153–54 (9th Cir. 1983).

Of the 97 records that remain in dispute, thirteen have been withheld entirely because "the exempt portions were so inextricably intertwined with any non-exempt portions that any segregable material would not have been meaningful." (*See Vaughn* Index at 2, 13–14, 16–18, 20–21, 22–23, 42, 45–47, 53–54, 56–57.)  These entries consist of photographs of the deceased servicemembers' journal entries, photographs and screenshots of calls and text messages, screenshots of SnapChat messages, medical reports, screenshots of financial transactions, and a copy of a suspected suicide note.  (*See id.*)  In her initial Declaration, Ms. Richman explained that "NCIS withheld materials in their entirety only where the exempt portions of the material were so inextricably intertwined with any non-exempt portions that any segregable material would not have been meaningful." (Richman Decl. ¶ 30; *see also* Supp. Richman Decl. ¶ 44.)  As Plaintiffs point out, this type of

conclusory statement, without further explanation, is insufficient.  (Pls.' MSJ at 20); *see also Wiener*, 943 F.2d at 972.

In an attempt to meet Defendants' burden on segregability, Ms. Richman explains in her Supplemental Declaration, "photographs or screenshots are more likely to warrant withholding in their entirety because photographs and screenshots (in my eight years of experience at NCIS) are more likely to be used or reproduced in publications to sensationalize the topic (whether it is suicide, sexual assault, domestic violence, etc.)." (Supp. Richman Decl. ¶ 29.)  "[Individuals and witnesses] have a strong privacy interest in not having the photographs and screenshots that law enforcement collects from them publicized in this manner."  (*Id.*)  She further notes that, "where an entire record or page consists largely of exempt photographs or screenshots, segregable non-exempt material (if any) is unlikely to be meaningful."  (*Id.*)

Plaintiffs argue that Defendants continue to offer only conclusory statements and sweeping generalizations to justify their withholdings rather than the required particularized explanation as to why non-exempt information could not be segregated. (Pls.' Reply at 9.)  The Court agrees. As Defendants note, there is evidence that they have acted in good faith in their dealings with this Court and Plaintiffs: they re-reviewed disputed records and released additional pages to Plaintiffs as a result of those secondary reviews.  (Richman Decl. ¶¶ 33, 36, 41, 45, 51.)  The descriptions of the withheld documents remain insufficiently detailed, however, and the explanations for the withholdings fail to provide particularized explanations establishing that all reasonably segregable portions of each challenged document have been segregated and disclosed. *Transgender L. Ctr.*, 46 F.4th at 786 ("We recognize that our caselaw, which demands a careful document-by-document review, may place considerable strain on already overburdened district courts.  That is precisely why we require the Government to come forward with clear, precise, and easily reviewable explanations for why information is not segregable.").

22-CV-834 TWR (DEB)

For example, the entry for "Pages 456-58 (31Aug22 release) V/Madeus, John" provides the following description: "Phone screenshot of SnapChat Conversation between deceased individual and a third party.  The exempt portions of the withheld material are so inextricably intertwined with the non-exempt portions, if any, that any segregable material would not be meaningful." (*Vaughn* Index at 20–21.)  The description does not indicate whether the screenshot was provided by a witness or whether the third party is a private citizen who could reasonably be expected to be identified through disclosure of the withheld information.  Nor does it adequately explain why no information is segregable.  As the Court discussed above, *see supra* Analysis § II(C), Defendants already have demonstrated that they can produce more detailed descriptions of such entries.  (*See, e.g.*, Supp. Richman Decl. ¶ 38 (for *Vaughn* Index entry "Pages 427-28 (31Aug22 release) V/Madeus, John," explaining that "[l]arge portions of the screenshots consist of photos that appear to depict a third party's face, as well as stills from videos exchanged between the third party and Madeus" and that "[w]hat little text is visible in the exchange is entirely personal and does not appear to pertain to Madeus's military life or any mental health struggles.")).

Due to the inadequacy of the *Vaughn* Index and supporting declarations overall, the Court lacks sufficient information to grant summary judgment on the issue of segregability as to these records.  For that same reason, the Court **DENIES** Plaintiffs' request for an *in camera* review at this time.  *See, e.g.*, *Transgender L. Ctr.*, 46 F.4th at 786–87 (remanding to district court, directing government to provide more detailed index and affidavits, and providing that district court should undertake *in camera* review "[i]f the government is unable to provide sufficiently specific affidavits" (quoting *Pac. Fisheries*, 539 F.3d at 1150)); *Wiener*, 943 F.2d at 979 ("*In camera* review may supplement an adequate *Vaughn* index, but may not replace it."); *Buckovetz II*, 2016 WL 1529901, at *3–4; *Ctr. for Biological Diversity v. Office of Mgmt. & Budget*, 625 F. Supp. 2d 885, 894 (N.D. Cal. 2009) (denying request for *in camera* review and permitting defendants to revise *Vaughn* index and declarations).  Should Defendants fail to provide an adequate *Vaughn* Index and

supporting declarations in response to the Court's Order, the Court will entertain a renewed request for *in camera* review.

## VI. Defendants' Request for Summary Judgment as to the Maldonato-Soto Records

Finally, Defendants seek partial summary judgment as to the Maldonato-Soto records because Plaintiff Huntsberry failed to exhaust his administrative remedies when NCIS initially declined to produce materials from the death investigation related to servicemember Xavier Maldonato-Soto.  (Defs.' MSJ at 17–18.)  Plaintiffs represent in their cross-Motion for Summary Judgment that they are no longer seeking access to the Maldonato-Soto file.  (Pls.' MSJ at 22 n.10.)

As Defendants acknowledge, although Plaintiffs ultimately received the Maldonato-Soto records, the First Amended Complaint does not seek disclosure of those records. (Defs.' MSJ at 17–18; FAC ¶ 7.)  The Court will not grant summary judgment on a claim that does not appear in the operative complaint.  *See, e.g.*, *Navajo Nation v. U.S. Forest Servs.*, 535 F.3d 1058, 1079–80 (9th Cir. 2008) (refusing to reach merits of claim that did not appear in complaint); *Smith v. Tumalo Irrigation Dist.*, No. 20-cv-345, 2023 WL 600234, at *6 (D. Or. Aug. 29) (recommending denial of motion for summary judgment on claim that did not appear in complaint), *report and recommendation adopted by* ECF No. 125 (issued Oct. 30, 2023).  Accordingly, the Court **DENIES** Defendants' Motion to the extent it seeks partial summary judgment as to the Maldonato-Soto records.  That said, for purposes of this action, the Court considers Plaintiffs' concession that they are no longer seeking access to the Maldonato-Soto file a judicial admission that they are abandoning their FOIA claims based on those documents.  *See, e.g.*, *Goldstein v. Exxon Mobil Corp.*, No. 17-cv-2477, 2023 WL 2667757, at *3–4 (C.D. Cal. Feb. 27, 2023).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART WITHOUT PREJUDICE** Defendants' Motion for Summary Judgment and **DENIES WITHOUT PREJUDICE** Plaintiffs' Cross-Motion for Summary Judgment.

The Court **GRANTS** Defendants <u>sixty (60) days' leave</u> from the date this Order is docketed electronically to prepare a supplemental *Vaughn* Index and supporting declarations that address the deficiencies identified above.  To facilitate the Court's review, Defendants **SHALL ASSIGN** numbers to every record in the *Vaughn* Index.  Within <u>thirty (30) days</u> of Defendants' provision of a supplemental *Vaughn* Index to Plaintiffs, the Parties **SHALL ENGAGE** in robust, face-to-face (in-person or by videoconference) meet-and-confer efforts regarding the adequacy of Defendants' revised *Vaughn* Index to resolve entirely or narrow their dispute over the withheld information.  To the extent the Parties narrow their dispute, the records that no longer are in dispute should not appear in the supplemental *Vaughn* Index.  If the Parties still require Court intervention at the expiration of the 30-day meet-and-confer period, the Parties **SHALL FILE** a joint status report in which they propose a consolidated briefing schedule for their respective renewed summary judgment motions.

**IT IS SO ORDERED.**

Dated:  December 15, 2023

Honorable Todd W. Robinson
United States District Judge